**CARSTENS, ALLEN & GOURLEY, LLP**
M. Conner Hutchisson
California Bar No. 327872
hutchisson@caglaw.com
1707 Cole Blvd, Suite 210
Golden, Colorado 80401
Phone: (720) 798-6680

Counsel for Defendant

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLUS EV HOLDINGS, INC., dba INTIMATE ROSE, | Case No.: 3:24-cv-01363-LL-BLM |
| Plaintiff, | |
| v. | JURY TRIAL DEMANED |
| NEWFLORA LLC, | **ANSWER TO INTIMATE ROSE'S** |
| Defendant. | **12(c) MOTION** |

Plaintiff's 12(c) motion (dkt. 25) (the "Motion") is moot in light of Defendant's subsequently-filed first-amended answer and counterclaims, which was filed as a matter of right pursuant to FRCP 15(a)(1)(B).

Furthermore, if the Court chooses to consider the substance of the Motion, the Court should deny every ground for dismissal raised in it.

## Table of Contents

*I.   Introduction* .................................................................... *1*

*II.  Background* ....................................................................... *2*

*III.   Argument* ........................................................................ *3*

   **A.  Counterclaim 2: Invalidity for Double Patenting** .................................... 3

     1.   Under the *Vogel* test, the scope of the claims in 'D061 and 'D286 are substantially similar to each other, resulting in statutory double patenting...... 3

     2.   Infringement under the *Vogel* test is a question of fact that is generally inappropriate to decide on a motion to dismiss. ..................................................... 6

   **B.  Counterclaim 4: Antitrust** ......................................................... 7

     1.   *Noerr Pennington* does not apply to (1) patent misuse based on statutory double patenting; (2) communications to Amazon that are unrelated to this litigation; or (3) allegations of sham litigation ....................................... 7

     2.   Defendant pleads sufficient facts to establish antitrust liability ............... 13

   **C.   Counterclaims 3 and 5: Tortious Interference & Unfair Competition** 15

     1.   Noerr Pennington ............................................................... 16

     2.   California' Litigation Privilege .................................................. 17

     3.   California's Anti-SLAPP ......................................................... 18

**Cases**

*Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015)..........................29

*Andersen Hotels v. E.W. Merritt Farms*, 2018 Cal. Super. LEXIS 103685 (L.A. Sup. 2018) ...................................................................................................................... 28, 29

*CAP Exp., Ltd. Liab. Co. v. Zinus, Inc.*, 2023 U.S. Dist. LEXIS 179198 (C.D. Cal. Sep. 28, 2023) ...........................................................................................................26

*Carbone v. CNN, Inc.*, 910 F.3d 1345 (11th Cir. 2018)..............................................29

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982) ....................................................................................................................16

*Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376 (1995) ....................27

*Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359 (Cal. 1st Ct. App. Sept. 20, 1999) ........................................................................................................22

*Enerlites, Inc. v. Century Prods.*, 2018 U.S. Dist. LEXIS 223173 (C.D. Cal. Aug. 13, 2018) ......................................................................................................................11

*Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830 (9th Cir. 1980) ...............................16

*Evolve Techs., Ltd. Liab. Co. v. Coil Winding Specialist, Inc.*, 2019 U.S. Dist. LEXIS 52152 (S.D. Cal. Mar. 27, 2019)............................................................................24

*Golden Eye Media U.S., Inc. v. Trolley Bags UK, Ltd.*, 525 F. Supp. 3d 1145 (S.D. Cal. 2021)......................................................................................................14, 15, 21

*Gorham Co. v. White*, 81 U.S. 511 (1872) ....................................................................9

*Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021) .............................23

*Hicks v. Grimmway Enters., Inc.*, 2023 U.S. Dist. LEXIS 97760 (S.D. Cal. June 5, 2023) ................................................................................................................... 24

*In re Vogel*, 422 F.2d 438 (C.C.P.A. 1970) ....................................................................... 8

*Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019) ........................................................... 29

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed. Cir. 1993) ................. 11

*Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186 (Fed. Cir. 1988) .................................... 11

*Mayle v. Felix*, 545 U.S. 644 (2005) .............................................................................. 16

*Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318 (Fed. Cir. 2010) ........................ 14

*Prof'l Real Estate Inv'rs Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993)  16

*Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26 (1998) ......................... 28

*Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010) .......................... 11

*Samsung Elecs. Co. v. Apple Inc.*, 580 U.S. 53 (2016) ................................................... 9

*Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016) ........................................................ 26

*Thimes Sols., Inc. v. TP Link USA Corp.*, 2022 U.S. App. LEXIS 10317 (9th Cir. Apr. 15, 2022) ................................................................................................................ 22

*Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637 (1947) ........... 14

*TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120 (C.D. Cal. 2009) 24

*Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064 (N.D. Cal. 2005) .............. 27

**Statutes**

Business and Professions Code § 17200 ..................................................... 28

Cal. Civ. Code § 47(b) .......................................................................... 22

Cal. Code Civ. Pro. § 425.16(c)(1)................................................... 23, 24

Cal. Code Civ. Pro. § 425.17(c) ....................................................... 23, 24

Fed. R. Civ. P. 12 ............................................................................. 29

Fed. R. Civ. P. 15 ............................................................................. 1, 6

Fed. R. Civ. P. 56 ............................................................................. 29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    Introduction

The Court should deny the Motion as moot.  Within 21 days of Plaintiff's answer to Defendant's Counterclaims (dkt. 18), Defendant filed first-amended counterclaims (dkt. 30) under Rule 15(a)(1)(B).  Fed. R. Civ. P. 15(a)(1)(B) ("[a] party may amend its pleading once as a matter of course no later than: . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading.").  Because the Motion relates to Defendant's original answer and counterclaims, which is no longer the operative pleading, the Motion is moot.

If the Court chooses to read on, it will see that Defendant pleads facts sufficient to support each of its counterclaims.

The Motion addresses Defendant's counterclaims 2 (invalidity), 3 (tortious interference), 4 (antitrust), and 5 (unfair competition).  The Motion also attempts to squeeze in a separate anti-SLAPP motion.

Counterclaim 2 deals with statutory double-patenting, which is a factual inquiry around whether a product can infringe one patent without infringing another: Defendant's allegations explain why a product cannot.  Counterclaim 4 sufficiently pleads each of the elements required by the Sherman and Clayton Acts.  Counterclaims 3 and 5 are not barred by litigation privilege because they point to facts unrelated to this litigation (or any litigation), and none of the communications were made in serious anticipation of litigation.  Counterclaims 3–5 are not barred by *Noerr Pennington* because the claims involve (1) patent misuse based on

Response to Motion to Dismiss          - 1 -          Case No. 3:24-cv-01363

statutory double patenting; (2) communications to Amazon that are unrelated to this litigation; and (3) allegations of sham litigation.

Furthermore, the anti-SLAPP motion should be denied because (1) the facts Defendant relies on fall within the "commercial speech" exception to California's anti-SLAPP; (2) there is no litigation privilege over the facts Defendant relies on; and (3) California's anti-SLAPP statute cannot be brought in federal court because it conflicts with, and cannot supersede, the federal rules of civil procedure.

## II.     Background

Defendant filed its original Answer and Counterclaims on November 4, 2024. Dkt. 18.  Plaintiff filed its answer to those original Counterclaims on December 6, 2024. Dkt. 23.  Plaintiff filed the Motion on December 13, 2024.  Dkt. 25.  Defendant filed its First-Amended Answer and Counterclaims on December 27, 2024.  Dkt. 30.

Defendant's counterclaims each relate to Plaintiff's attempts to bully Defendant through—among other things—(1) baseless assertions of its Asserted Patent; (2) baseless assertions of a patent not in this lawsuit (the 'D061 Patent); (3) baseless threats to turn this into a larger lawsuit by adding trademark and copyright claims; and (4) baseless communications to the FDA about Defendant.

Plaintiff tries to avoid antitrust, unfair competition, and tortious interference claims that stem from that bullying by arguing that those bullying activities are shielded by litigation privilege and the *Noerr Pennington* doctrine.  Plaintiff also argues that Defendant's act of even trying to push back on those bullying activities entitles Plaintiff to attorney's fees under California's anti-SLAPP statute because

bullying activities are supposedly a form of protected free speech. Plaintiff's attempts to bully its much-smaller competitors, and force them out of the market through anticompetitive tactics, apparently does not end.

As detailed in the response below, litigation privilege, *Noerr Pennington*, and anti-SLAPP do not apply to Defendant's counterclaims. And each of Defendant's counterclaims are sufficiently plead even just with the public pre-discovery documents Defendant has available to it.

## III. Argument

### A. Counterclaim 2: Invalidity for Double Patenting

Plaintiff asked the court to dismiss NewFlora's double-patenting-based defenses and counterclaims. But Plaintiff's request suffers from two deficiencies: (1) Plaintiff does not recite or apply the *Vogel* test, which looks at which products can infringe the claims of the two patents; and (2) infringement is a fact question, which is inappropriate for resolution at the motion to dismiss stage.

#### 1. Under the *Vogel* test, the scope of the claims in 'D061 and 'D286 are substantially similar to each other, resulting in statutory double patenting.

The predecessor to the Federal Circuit held in *Vogel* that a "good test, and probably the only objective test, for 'same invention,' is whether one of the claims could be literally infringed without literally infringing the other. *In re Vogel*, 422 F.2d 438, 441 (C.C.P.A. 1970). Here, the 'D061 and 'D286 Patents are design patents. A design patent is infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the

same." *Samsung Elecs. Co. v. Apple Inc.*, 580 U.S. 53, 56 (2016) (citing *Gorham Co.* v. *White*, 81 U.S. 511, 528 (1872)). So, the question this Court needs to answer on the statutory double patenting issue is: can one of the 'D061 or 'D286 Patent claims be infringed without infringing the other under the substantial similarity test?

The figures and description in a design patent define the scope of the claim. Below is a side-by-side comparison of exemplary figures in the 'D061 and 'D286 Patents.

| 'D286 Patent Claim | 'D061 Patent Claim |
| --- | --- |
|  | |

The only possible difference between these two claims involves the portion shown in dashed lines at the top end of Figure 6 of the 'D286 Patent. Defendant's

position as to double patenting is that these two designs are substantially similar to one another from the perspective of an ordinary observer, especially if the scope of these patents is read as broadly as Plaintiff apparently reads their scope.  It doesn't matter that one is slightly broader than the other.  The standard for infringement is substantial similarity, not identity. And under the *Vogel* test, the Court should look at the claims from the perspective of infringement, and therefore substantial similarity, to determine whether they cover the same invention.

Plaintiff sent three take down requests to Amazon—one based on the 'D061 Patent and two based on the 'D286 Patent.  The take-down requests were directed to the same allegedly infringing product: Defendant's pelvic wand.[1]  One of the differences between Defendant's pelvic wand and both 'D061 and 'D286 designs is the bulbous end indicated by the red arrow below.  By sending takedown requests alleging infringement of both design patents over the same product having a bulbous end, Plaintiff admitted that the scope of both design patents is indistinguishable from one another, because both patents allegedly cover that bulbous end.

---

[1] The take-down request for the 'D061 Patent and one of the take-down requests for the 'D286 Patent were for NewFlora's standard pelvic wand.  The other take-down request for the 'D286 Patent was for NewFlora's vibrating pelvic wand, having the same shape.

Further, Plaintiff takes the position that its own product, which does not have the bulbous end of NewFlora's product, is also covered by both patents. Therefore, according to the position taken by Plaintiff, the disclaimed end of the 'D286 Patent is immaterial in determining infringement, and NewFlora's statutory double patenting defense and counterclaim should be allowed to proceed. Defendant included these explanations in its First Amended Answer and Counterclaims.  Dkt. 30 at 11–14, 22–25, 33–35.

### 2. Infringement under the *Vogel* test is a question of fact that is generally inappropriate to decide on a motion to dismiss.

Design patent infringement is a question of fact.  *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed. Cir. 1993))."); *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1190 (Fed. Cir. 1988).  It is "generally inappropriate" to determine infringement on a motion to dismiss, "unless the claimed design and accused product are so plainly dissimilar that it is implausible that an ordinary observer would confuse them."  *Enerlites, Inc. v. Century Prods.*, 2018 U.S. Dist. LEXIS 223173, at *6-7 (C.D. Cal. Aug. 13, 2018) (collecting cases).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, Defendant pled that the 'D286 Patent is similar to the 'D061 Patent, and provides a side-by-side comparison.  Dkt. 18 at 22.  Defendant also pled that the 'D286 and 'D061 Patents cover the same product, and that the 'D286 Patent "includes the entire scope" of the 'D061 Patent.  *Id.*  Defendant also pled that Plaintiff has taken the position that both patents cover the same product.  *Id.* at 23.  These factual allegations are more than enough to overcome Plaintiff's motion to dismiss on the factual question of infringement under the *Vogel* test.

Again, Defendant expanded on these factual allegations in the First Amended Answer and Counterclaims.

**B.     Counterclaim 4: Antitrust**

   **1.     *Noerr Pennington* does not apply to (1) patent misuse based on statutory double patenting; (2) communications to Amazon that are unrelated to this litigation; or (3) allegations of sham litigation**

Plaintiff alleges that Defendant's antitrust counterclaim is barred by the *Noerr Pennington* doctrine.  The *Noerr Pennington* doctrine generally immunizes a party for petitioning a department of the government for redress.  But Defendant does not only point to Plaintiff's bringing of this lawsuit as evidence of anticompetitive conduct; and even if it did, the *Noerr Pennington* doctrine's "sham litigation" exception applies.

Defendant's antitrust counterclaim pleads facts that do not implicate the *Noerr Pennington* doctrine.  Plaintiff's motion misstates that "[t]he counterclaim is based entirely on Plus EV filing this lawsuit."  Instead, Defendant's Original

Counterclaims explain that Plaintiff is engaged in patent misuse by having two patents on the same invention (at the time of the Original Counterclaim, having different expiration dates), and asserting a patent it knows or should know is invalid and/or not infringed.  Dkt. 18 at 25.  Defendant's First-Amended Counterclaim similarly provides that Plaintiff should know that its patent is invalid and/or not infringed, and that Plaintiff engages in patent misuse, but adds that Plaintiff's baseless communications to the FDA are similarly anticompetitive.  Dkt. 30 at 44.  Defendant's First-Amended Counterclaim also clarifies how Plaintiff's assertion of the 'D061 Patent on Amazon (and not in this litigation) fits into the antitrust analysis.  *Id.* at. 39-53.

First, Defendant's antitrust allegations based on patent misuse for statutory double patenting stems from obtaining a second patent, so it can be satisfied independent of facts related to petitioning a government, and does not implicate the *Noerr Pennington* doctrine.  Therefore, Defendant's antitrust counterclaim proceeds at least on the basis of its patent misuse allegation.

Defendant claims that Plaintiff engages in patent misuse because Plaintiff has two patents on the same invention.  Defendant describes in its First Amended Counterclaims how one patent cannot be infringed without the other patent being infringed, evidenced in-part by Plaintiff's own take-down requests asserting both patents without distinction.  *Id.* at 11, 22-23, 33-34.  The First Amended Counterclaims elaborate on how a simple visual inspection shows that the small difference between the two patents is not an invention, and is not significant

enough to be accounted for in a "substantially similar" design-patent-infringement analysis.  *Id.*  Patent misuse is based on a patentee "impermissibly broadening" the scope of a patent grant in a way that has anticompetitive effects.[2]  Here, Plaintiff obtained a second patent on the same invention, which allows Plaintiff twice the opportunities to request a product be taken down from platforms like Amazon, and requires twice the fees to invalidate.  Dkt. 30 at 14, 39-40.  This additional hurdle created by having multiple patents on the same invention disincentivizes competitors from entering the market.  *Id.*  And, when Plaintiff decided to enforce both patents against competitors in the market, it has the effect of pushing those competitors out of the market.  *Id.* at 25, 47.

Second, Defendant's antitrust allegations based on Amazon take-down requests do not implicate the *Noerr Pennington* doctrine because those communications are not related to a petition to a department of the government.[3]  Plaintiff presents no evidence that any of its take-down requests to Amazon are related to Plaintiff's filing of this litigation.  Furthermore, Plaintiff sent Amazon a

---

[2] *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) ("[W]e have characterized patent misuse as the patentee's act of impermissibly broaden[ing] the physical or temporal scope of the patent grant with anticompetitive effect.") (internal quotation marks omitted); *see also Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 646 (1947) ("He who acquires two patents acquires a double monopoly. As patents are added to patents a whole industry may be regimented.")

[3] *Golden Eye Media U.S., Inc. v. Trolley Bags UK, Ltd.*, 525 F. Supp. 3d 1145, 1241 (S.D. Cal. 2021) (explaining that "there is no constitutionally-protected right to 'petition' Amazon" under the Noerr Pennington doctrine because "Amazon is a corporation; it is not part of the government.").

take-down request based on the 'D286 Patent (the Asserted Patent) and the 'D061 Patent (not asserted in litigation).  Dkt. 18 at 24-25; dkt. 30 at 12-14.  Plaintiff cannot claim that tortious communications involving the 'D061 Patent can be related to this litigation since that patent is not asserted in this litigation.  Since the pleaded facts for the Amazon take-down requests do not stem from the filing of this lawsuit, or any other petitioning to the government, the *Noerr Pennington* doctrine does not apply to those facts.

Third, each of Defendant's factual allegations are exempt from *Noerr Pennington* because of the "sham litigation" exception.  That exception precludes the application of *Noerr Pennington* to antitrust allegations for mere shams intended to interfere with a competitor's business.  *See Golden Eye*, 1238.  Plaintiff acknowledges that Defendant pleaded facts for that exception, but attempts to challenge their sufficiency.  Motion at 6.  Plaintiff argues that Defendant's pleadings were insufficient because there is an explanation for Plaintiff's lawsuit other than attempting to interfere with Defendant's business: the alternative explanation being that "Plus EV believes its intellectual property has been infringed."  *Id.* at 6–8.  But Defendant's facts show in detail why Plus EV could not reasonably hold that view, so at a minimum there is a dispute of fact as to whether the sham litigation exception applies, which is not appropriately resolved in a 12(c) motion.

The sham litigation exception to *Noerr Pennington* has two elements: (1) that the lawsuit is objectively baseless; and (2) that the baseless lawsuit "conceal an

attempt to interfere directly with the business relationships of a competitor." *Prof'l Real Estate Inv'rs Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993) (cleaned up).  Plaintiff's arguments fit into the second element, and are based on Defendant "not sufficiently alleg[ing] that Plus EV had an improper motive in filing this patent infringement suit."  Dkt. 25-1, 7.

In its Original Counterclaims, and in its First Amended Counterclaims, Defendant has a section titled "Sham Litigation – conceals an attempt to interfere directly with the business relationships of a competitor."  Dkt. 18 at 29; dkt. 30 at 43.  That section follows the section about the infringement allegations being objectively baseless.  Whether a party "attempt[s] to interfere" with a business relationship is a subjective determination, so—absent direct evidence, which is difficult to obtain before discovery—this element may be inferred through circumstantial evidence.  *Cf. Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 835 (9th Cir. 1980) (cautioning against pre-trial dismissal of antitrust claims because the evidence lies "largely in the hands of the defendants"); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253 (9th Cir. 1982) (overruled in part on other grounds by *Mayle v. Felix*, 545 U.S. 644, 657-58 (2005)) (the question of whether "something is a genuine effort to influence government action, or a mere sham, is a question of fact.")

Defendant's First Amended Counterclaims describe how Plaintiff's anticompetitive intent can be inferred from its anticompetitive actions.  Defendant explained that "there is no reasonable explanation for Plaintiff's anticompetitive

conduct other than that Plaintiff wants Defendant out of business, and intends to achieve that result through anticompetitive conduct." Dkt. 30 at 45. Plaintiff's conduct includes "communicating baseless, bad-faith take-down requests to Amazon," which "requir[ed] that Defendant shift its attention and resources to this litigation," and which resulted in Defendant being "unable recently to restock some of its pelvic-wand products." *Id.* at 44. Furthermore, the First-Amended Counterclaims elaborate, "Plaintiff knows that dealing with the Amazon take-down requests, this litigation, and the FDA communications would affect Defendants' resources." *Id.* Defendant pled repeatedly throughout its Original Answer and Counterclaims, and its First Amended Answer and Counterclaims, that Plaintiff's assertions of patent infringement are baseless, so an allegation that Plaintiff just wants to protect its IP is sufficiently refuted. *Id.*, *passim*. Furthermore, Plaintiff's threat to add copyright and trademark claims to this litigation, without specifying those alleged claims, also shows that Plaintiff's desire is to pressure Defendant rather than to protect its IP. *Id.* at 28.

Defendant pleads that Plaintiff's communications to Amazon were baseless, that its communications to the FDA were baseless, and that its filing of this lawsuit was baseless. *Id.*, *passim*. For example, no reasonable litigant could find that the Asserted Patent is infringed or valid. *Id.* at 40. Defendant pleads that each of those baseless assertions interfered with Defendant's business relationships. *Id.* at 44. Not only is there an entire counterclaim devoted to tortious interference with business relationships, but Defendant pled that this litigation (and other responses

to Plaintiff's anticompetitive conduct) prevented Defendant from restocking some of its products on Amazon: Plaintiff directed Defendant's attention and resources to this litigation, the FDA communications, and previously to the Amazon take-down requests. *Id.* Accordingly, each allegation fits into the "sham litigation" exception.

### 2. Defendant pleads sufficient facts to establish antitrust liability

Plaintiff alleges that Defendant's antitrust counterclaim, under the Sherman Act and the Clayton Act, should be dismissed for failing to allege (1) a relevant market, (2) market power, and (3) an antitrust-based injury. But Defendant's Original Counterclaims pled facts sufficient for each of those factors, and Defendant's First-Amended Counterclaims plead additional facts for those factors.

First, for the relevant market, Defendant pled in its Original Counterclaims that the markets are "pelvic wants, pelvic floor devices, and what Plaintiff calls 'pelvic health products.'" Dkt. 18 at 30. Plaintiff, in its Complaint, identified "pelvic health products" as an appropriate market. Dkt. 1 at ¶ 3. In its First-Amended Counterclaims, Defendant further specified that "[t]he relevant product market is pelvic wands" and "[t]he relevant geographical market is the United States." Dkt. 30 at 45. The First-Amended Counterclaims explain that pelvic wands cannot be substituted for other types of products, based on their functionality; and the United States is the relevant market for goods sold online in every state and attacked with a U.S. Asserted Patent. *Id.* at 19.

Second, for market power, Defendant pled in its Original Counterclaims that "Plaintiff controls a large portion of the pelvic health product market," and has an

1    "industry reputation of being monopolistic and unfairly competing." Dkt. 18 at 14.

2    Plaintiff's market power is evidenced by its ability to pressure Defendant with

3    baseless take-down requests and baseless litigation.  In its First-Amended

4    Counterclaims, Defendant further specifies that "Plaintiff has monopoly power in

5    the U.S. pelvic wand market, and that power has a tremendous potential to

6    increase." Dkt. 30 at 48-49.  Defendant elaborated by showing publicly-available

7    information on sales of pelvic wands on Amazon, which shows that Plaintiff sells

8    seven types of pelvic wands, with over 5000 sales per month, while Defendant

9    currently has only one type of pelvic wand for sale on Amazon with a listed sales

10   under 200 per month.  *Id.*  Defendant's pleading shows that, based on publicly-

11   available data, which can be used to infer broader U.S. data, Intimate Rose

12   currently controls over 60% of the pelvic wand market, and is able to sell its wands

13   for higher prices than its competitors.  *Id.* at 50.  Defendant pled that by selling its

14   vibrating wands for a lower price, it ran out of supply, and Plaintiff is able to

15   continue selling its vibrating wands for higher prices.  *Id.* at 51.  Furthermore,

16   Defendant explained that absent applicability of the antitrust laws to Plaintiff's

17   conduct, Plaintiff can exclude Defendant and other competitors from the market

18   through its anticompetitive conduct.  *Id.* at 51-52.

19         Third, for antitrust-based injury, Defendant pled in its Original

20   Counterclaims that it suffered injuries, including the costs of this litigation.  Dkt. 18

21   at 30.  The costs of this litigation can, as explained in the First Amended

22   Counterclaims, prevent Defendant from devoting energy and resources to restocking

its products.  Dkt. 30 at 44, 51, 53-54.  In its First-Amended Counterclaims, Defendant further specifies that Plaintiff's possession of two patents on the same invention, and Plaintiff's frivolous IP and FDA communications, scare away potential competitors who are observing this conduct from the outside, and attempt to force existing competitors (like Defendant) out of the market. *Id.* at 50-52.

**C.    Counterclaims 3 and 5: Tortious Interference & Unfair Competition**

Plaintiff alleges that Counterclaims 3 and 5 are barred by *Noerr Pennington*, and California's Litigation Privilege.  Plaintiff also adds an anti-SLAPP motion to this section of the Motion.  As explained below, *Noerr Pennington* and Litigation Privilege relate to petitioning the government and litigation speech, but Defendant's Counterclaims 3 and 5 are sufficiently pled based on conduct not attributable to those categories.  Plaintiff's anti-SLAPP motion is based on alleged litigation speech, so it falls for the same reason as Plaintiff's litigation privilege argument.  And Plaintiff's anti-SLAPP motion also fails based on the "commercial speech" exception of California's anti-SLAPP statute.

Counterclaim 3 (tortious interference) is based on Plaintiff's three sets of baseless communications to Amazon to have Defendant's products removed from Amazon's platform, involving the Asserted Patent and a patent not asserted in this litigation.  Counterclaim 5 (unfair competition) is based on tortious interference, patent misuse, and sham litigation.

1      **1.    Noerr Pennington**

The *Noerr Pennington* doctrine protects a party's right to petition the government.  This Court holds that because Amazon is not the government, a take-down request is not a petition to the government.  *Golden Eye Media U.S., Inc. v. Trolley Bags UK, Ltd.*, 525 F. Supp. 3d 1145, 1241 (S.D. Cal. 2021) (explaining that "there is no constitutionally-protected right to 'petition' Amazon" under the *Noerr Pennington* doctrine because "Amazon is a corporation; it is not part of the government.").  Plaintiff presents no evidence that its Amazon take-down request is related to this litigation.  Accordingly, the *Noerr Pennington* doctrine is not applicable to Defendant's tortious-interference counterclaim (no. 3), and therefore not applicable to Defendant's unfair competition counterclaim (no. 5), which stems in-part from Plaintiff's tortious activities.

Furthermore, the unfair competition claim is also based on Plaintiff's antitrust activities, including its patent misuse and its sham litigation.  For the same reasons described for the antitrust counterclaim, above, the *Noerr Pennington* doctrine does not apply to Defendant's patent misuse and sham litigation pleadings for the unfair competition counterclaim.  For example, patent misuse based on statutory double patenting is based on Plaintiff obtaining multiple patents on the same invention, which is not petitioning conduct; and sham litigation (filing suit on a patent it should know is not infringed and/or is invalid) is an exception to the *Noerr Pennington* doctrine.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2.    California' Litigation Privilege

California's litigation privilege protects speech made in a litigation, judicial, or other official legal proceeding; or speech made "in the initiation or course of any other proceeding authorized by law."  Cal. Civ. Code § 47(b).  Plaintiff alleges that Defendant's tortious-interference and unfair-competition counterclaims should be dismissed because Plaintiff's take-down communications to Amazon are purportedly covered under litigation privilege.  But they aren't.

As explained in the sections above, this Court holds that take-down requests made to Amazon do not implicate the *Noerr Pennington* doctrine because Amazon is a corporation, and not a government entity.  For litigation privilege, similarly, communications to Amazon are not to a government, and are therefore not a legal, judicial, or other legal proceeding.  The litigation before this Court is a legal proceeding, so the only way communications to Amazon can qualify under California's litigation privilege is if they are "in the initiation or course of" this litigation.

In *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1376–1379 (Cal. 1st Ct. App. Sept. 20, 1999), the court explained that privilege can only be extended once litigation has become a "contemplated reality."  The Ninth Circuit applies that rule in the context of Amazon take-down communications to require that "complaints to Amazon . . . propose litigation" or show that Plaintiff "seriously contemplate[d] litigation at that time." *Thimes Sols., Inc. v. TP Link USA Corp.*, 2022 U.S. App. LEXIS 10317, at *2–3 (9th Cir. Apr. 15, 2022) (holding that because

Response to Motion to Dismiss        - 17 -        Case No. 3:24-cv-01363

"[d]efendant's complaints to Amazon do not propose litigation," "California's litigation privilege therefore does not shield Defendant's complaints to Amazon.").

Here, Plaintiff presents no evidence that its communication to Amazon included a threat of legal action, nor that it was in "serious anticipation" of this litigation. Furthermore, the evidence available to Defendant points away from that factor. For example, Plaintiff's Amazon communications included the 'D061 Patent, which Plaintiff does not assert in this litigation, and those communications occurred 12 months prior to the initiation of this lawsuit. Plaintiff's motion ignores that some of the facts Defendant pled for its tortious-interference and unfair-competition counterclaims relate to a patent not involved in this litigation.

### 3.    California's Anti-SLAPP

California's Anti-SLAPP statute protects a person's right of petition or free speech by "allow[ing] for early dismissal of meritless [F]irst [A]mendment cases aimed at chilling expression through costly, time-consuming litigation." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). Anti-SLAPP motions are typically brought by smaller defendants against better-funded plaintiffs, so Anti-SLAPP motions also carry with them a recovery of associated attorney's fees. *See* Cal. Code Civ. Pro. § 425.16(c)(1).

Before analyzing the merits of Plaintiff's Anti-SLAPP motion, courts must determine whether Anti-SLAPP applies to the identified speech. Section 425.17(c) provides what is referred to as a "commercial speech" exception to California's Anti-SLAPP.

The California legislature enacted the commercial-speech exception of section 425.17(c) because they recognized that, "with few exceptions, the anti-SLAPP statute does not apply to commercial speech about a competitor." *TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1142 (C.D. Cal. 2009) ("California courts hold that 'in most cases a competitor's statements regarding its competition would not fall within section 425.16, subdivision (e)(4).'").

A cause of action arising from commercial speech is exempt from the Anti-SLAPP law if four elements are satisfied:

1. the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;
2. the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;
3. the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and
4. the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

*Hicks v. Grimmway Enters., Inc.*, 2023 U.S. Dist. LEXIS 97760, at *6 (S.D. Cal. June 5, 2023) (finding that an ESG Report was commercial speech, shielded from Anti-SLAPP); *Evolve Techs., Ltd. Liab. Co. v. Coil Winding Specialist, Inc.*, 2019 U.S. Dist. LEXIS 52152, at *14 (S.D. Cal. Mar. 27, 2019) (finding that

communications to a party's customer is commercial speech, shielded from Anti-SLAPP).

Here, each element is satisfied. The state-law counterclaims are tortious interference and unfair business practices. First, the counterclaims are against Plaintiff, which is a company "primarily engaged in the business of selling of leasing goods" (i.e., selling pelvic wands). Second, the counterclaims arise from a representation of fact about a competitor's goods (i.e., Plaintiff's representation to Amazon that Defendant's goods are infringing). Third, the representation was made for the purpose of promoting Plaintiff's own goods (i.e., by having Defendant's products removed from Amazon's platform for periods of time, Plaintiff was able to remove a competitor to sell more of its own products). Fourth, the intended audience (Amazon) is a "person likely to . . . influence[] an actual or potential buyer or customer" (i.e., because Plaintiff misrepresented to Amazon that Defendant's products are infringing, Amazon delisted Defendant's products, which (1) prevented consumers from purchasing Defendant's products through the platform, (2) demoted Defendant's products in search results, and (3) caused consumers to incorrectly infer based on those results that Defendant's product is inferior and infringing). Thus, all four elements of the commercial speech exception are satisfied.

If the Court does not find the exception applicable, it moves on to the merits of the Anti-SLAPP motion using a two-step analysis. First, Plaintiff has the burden of showing that Defendant's counterclaims arise from protected speech (i.e., speech "made in connection with a public issue in furtherance of the defendant's right to

free speech under the United States of California Constitution."). *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016). Second, Defendant must then establish that it has "a reasonable probability" of prevailing on its claim. *Id.*

For the first step, Plaintiff's request that Amazon delist Defendant's products is not protected speech. As explained in the sections above, the Amazon takedown requests are not covered by litigation privilege. Furthermore, the takedown requests are not the type of speech intended to be protected by the Anti-SLAPP statute because they are not "in connection with a public issue" as required by the Anti-SLAPP statute.

For the second step, the Court analyzes whether Defendant has a reasonable probability of prevailing on its tortious-interference and unfair-competition counterclaims after excluding the protected speech. The Central District of California addressed this step—with respect to communications to Amazon, Walmart, and Wayfair—based on whether the counterclaims survived a motion to dismiss after accounting for litigation privilege. *CAP Exp., Ltd. Liab. Co. v. Zinus, Inc.*, 2023 U.S. Dist. LEXIS 179198, at *15–21 (C.D. Cal. Sep. 28, 2023) ("As explained above, the Court denies Defendants' Motion to Dismiss with regard to every claim in Cap Export's Amended Complaint. That analysis convinces the Court that Cap Export has sufficiently demonstrated a probability of success on the challenged claims."). *See Thimes Sols., Inc. v. TP Link USA Corp.*, 2022 U.S. App. LEXIS 10317, at *2–3 (9th Cir. Apr. 15, 2022) ("California's litigation privilege

therefore does not shield Defendants' complaints to Amazon from litigation. Accordingly, Plaintiff prevails on the anti-SLAPP inquiry.").

California tortious interference has five elements:

1. an economic relationship between the plaintiff and third party containing the probability of future economic benefit to the plaintiff;
2. knowledge by the defendant of the existence of the relationship;
3. intentional acts on the part of the defendant designed to disrupt the relationship;
4. actual disruption of the relationship; and
5. damages to the plaintiff proximately caused by the acts of the defendant.

*Della Penna v. Toyota Motor Sales, USA, Inc.*, 11 Cal. 4th 376 (1995); *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1066 (N.D. Cal. 2005).

The first element is satisfied because Defendants' sales and advertising of products on Amazon's platform is an economic relationship between Defendant and Amazon with the potential of future economic benefit to Defendant.

The second element is satisfied because Plaintiff knew about Defendant's relationship with Amazon when it sent the requests to take down Defendants' products.

The third element is satisfied because Plaintiff's communication to Amazon to have Defendant's products delisted was performed for the purpose of achieving the delisting result. Courts explain for some tortious-interference claims that this element requires an independent wrongful act, but that act may be satisfied, for example, through an allegation that the patent-infringement statements are false

and/or defamatory. *Visto Corp. v. Sproqit Techs., Inc.*, 360 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005). In *Visto*, the Northern District of California found this counterclaim language to be sufficient: "Visto knew, or should have known, that its allegations of patent infringement by Sproqit were unsupported or false."). *Id.* Here, similarly, Defendant alleged that the statements to Amazon were false. Furthermore, California courts do not impute "wrongful conduct" into this element for claims of tortious interference with contract. *Andersen Hotels v. E.W. Merritt Farms*, 2018 Cal. Super. LEXIS 103685 (L.A. Sup. 2018) ("It is generally not a requirement that 'the defendant's conduct be wrongful apart from the interference with the contract itself.'") (citing *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998)).

The fourth element is satisfied because Defendant's products were delisted from Amazon for periods of time, causing Defendant and Amazon to miss out on revenue they otherwise should have earned.

The fifth element is satisfied because Defendant suffered damages, for example, of lost sales volume and lost sales velocity during the time its products were unavailable to Amazon customers.

California's unfair competition law under Business and Professions Code § 17200, et seq. proscribes "any unlawful business practice," which includes unlawful, unfair, or fraudulent business acts. Under that law, a practice may be prohibited as "unfair" or "deceptive" even if not "unlawful," and vice versa. *Andersen Hotels v. E.W. Merritt Farms*, 2018 Cal. Super. LEXIS 103685, *7–8 (L.A.

Super. Mar. 23, 2018).  California's unfair competition law can be satisfied based on tortious interference.  *Id.*

If the Court finds that Defendant's allegations relating to the '061 Patent (not asserted in this litigation) or patent misuse are not litigation-privileged, for example, then the Court must assess the elements of tortious interference and unfair competition for those pled facts.

In this case, Plaintiff's anti-SLAPP motion can be denied on all three independent grounds.  Plaintiff's speech falls within the commercial speech exemption, so no further inquiry is needed.  But even if the inquiry were carried forward, Plaintiff's communications are not protected activity, so they fail to meet the burden of the first prong.  And even if this Court finds that Plaintiff's communications are protected, Defendant still prevails on its counterclaims.

Additionally, California's state Anti-SLAPP law does not belong in federal court.  It is a procedural rule that conflicts with Federal Rules of Civil Procedure 12 and 56, based on answering the same question, so is preempted by federal law.  At least the 5th, 11th, and D.C. Circuits agree that state Anti-SLAPP laws do not belong in Federal Court.[4]

---

[4] *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019); *Carbone v. CNN, Inc.*, 910 F.3d 1345 (11th Cir. 2018); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015).

Dated: January 3, 2025                     Respectfully submitted,

                                           */s/M. Conner Hutchisson*
                                           M. Conner Hutchisson
                                           California Bar No. 327872
                                           **CARSTENS, ALLEN & GOURLEY, LLP**
                                           1707 Cole Blvd, Suite 210
                                           Golden, Colorado 80401
                                           (720) 798-6680
                                           hutchisson@caglaw.com

                                           Counsel for Defendant